IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs May 8, 2001

## STATE OF TENNESSEE v. KATHLEEN MALLEY

**Appeal from the Criminal Court for Shelby County**
**No. 98-11653      Joseph B. Brown, Jr., Judge**

_____

**No. W2000-01064-CCA-R3-CD - Filed July 16, 2001**

_____

The Defendant, Kathleen Malley, entered a guilty plea to theft of over $60,000, a Class B felony, in exchange for an agreed sentence of eight years incarceration. Following a sentencing hearing to determine the manner of service of that sentence, the Defendant was ordered to serve six months in jail followed by twelve years of probation. She was also ordered to pay $100,000 in restitution. In this appeal as of right, the Defendant argues that the trial court erred by refusing to grant her full probation. We find no error. Thus, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

DAVID H. WELLES, J., delivered the opinion of the court, in which ALAN E. GLENN, J. and L.T. LAFFERTY, SR.J., joined.

Leslie I. Ballin, Memphis, Tennessee, for the appellant, Kathleen Malley.

Paul G. Summers, Attorney General and Reporter; Kim R. Helper, Assistant Attorney General; William L. Gibbons, District Attorney General; and Patience Branham, Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION

The facts presented at the Defendant's guilty plea and sentencing hearings establish that the Defendant was employed as a bookkeeper for John R. Thompson, who owned a real estate business. She was hired in 1984 by Greta Thompson, John Thompson's wife. In 1997, the Thompsons began noticing irregularities in their books. Following an investigation into the irregularities, the Thompsons discovered that the Defendant had been stealing money from the company. According to Ms. Thompson, the irregularities dated back to sometime in 1992. During this time, the Defendant had been taking payroll checks and making them payable to herself. She had also taken money from the escrow account. Although the Thompsons presented only about $60,000 in forged checks, Ms. Thompson believed that the actual loss was more than $200,000. The Thompsons

asserted that they had to refinance their office building in order to stay in business, and that if they had not had good credit, they would have been driven completely out of business.

Mr. Thompson testified that he was particularly troubled by the Defendant's violation of his thirteen-year trust. Because of the stress of the situation, Mr. Thompson has been taking medication for depression. He testified that the Defendant never even apologized for her actions. According to Ms. Thompson, all of the people working for the business felt sorry for the Defendant and tried to help her through difficult times. Ms. Thompson testified that the Defendant moved into a new house with a $1,400 per month house payment, that she sent her children to private school, and that she bragged at work about her "wonderful" husband. However, two years before they discovered that she was stealing money, the Defendant filed for bankruptcy. Ms. Thompson said that the Defendant made no effort to move into a smaller house or otherwise reduce her bills. On one occasion the office took up a collection for the Defendant because the Defendant reported that her purse had been stolen and that it contained $1,400 in cash. On another occasion Mr. Thompson loaned the Defendant money for two house payments, which she never repaid.

The Defendant admitted stealing money from her employer, John F. Thompson, but she could not remember when she started taking money or how much she took. She testified that she took the money to try to maintain a normal life for her children. She explained that she made only about $20,000 per year. Her husband owned a business which failed, and he quit helping her pay the bills. She eventually filed for bankruptcy in an effort to keep their new home. The Defendant testified that she thought she would be able to pay the money back after she and her husband received a settlement from a court case involving her husband's business, but the lawsuit was unsuccessful. The Defendant testified that she had a nervous breakdown as a result of her personal problems, and her two teenage daughters have developed emotional problems as well. The Defendant could not explain to the court why filing for bankruptcy did not end her financial difficulties. She testified that she still needed money to take care of her children and her mother.

At the time of sentencing the Defendant was fifty-two years old. She is a high school graduate with some college studies. She reported a history of steady employment. The Defendant underwent a psychological evaluation as part of her pre-sentence evaluation. The psychologist found that the Defendant "may have slightly overstated the extent of her difficulties, possibly for the purpose of gaining assistance," however the psychologist also found that "[i]ncarceration may be detrimental for [the Defendant] in light of her current age and psychiatric symptomatology."

Following the sentencing hearing, the trial court sentenced the Defendant to serve her eight-year sentence in split confinement. At the time of sentencing, the Defendant had served forty-two days in jail. The trial court ordered her to spend an additional six months in jail, followed by twelve years probation. In so doing, the trial court stated,

> Now, The Court feels . . . considering violation of trust and that the defendant is responsible for this - - this is just egregious, she's gutted this business, ruined it and caused some people who loved her and came to trust her, rely upon her and befriended her to be grievously harmed.

I have read the Psychological Report, all that's well and good. She has mental health issues which are severe, however, it's a matter of character. She seeks to acquire attention and such like for her problems, but there are ways that are acceptable and ways that are not acceptable.

The Defendant asserts on appeal that she should have been granted full probation instead of split confinement. When an accused challenges the length, range, or manner of service of a sentence, this Court has a duty to conduct a de novo review of the sentence with a presumption that the determinations made by the trial court are correct. Tenn. Code Ann. § 40-35-401(d). This presumption is "conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991).

When conducting a de novo review of a sentence, this Court must consider: (a) the evidence, if any, received at the trial and sentencing hearing; (b) the presentence report; (c) the principles of sentencing and arguments as to sentencing alternatives; (d) the nature and characteristics of the criminal conduct involved; (e) any statutory mitigating or enhancement factors; (f) any statement made by the defendant regarding sentencing; and (g) the potential or lack of potential for rehabilitation or treatment. See Tenn. Code Ann. §§ 40-35-102, -103, -210; State v. Brewer, 875 S.W.2d 298, 302 (Tenn. Crim. App. 1993); State v. Thomas, 755 S.W.2d 838, 844 (Tenn. Crim. App. 1988).

If our review reflects that the trial court followed the statutory sentencing procedure, that the court imposed a lawful sentence after having given due consideration and proper weight to the factors and principles set out under the sentencing law, and that the trial court's findings of fact are adequately supported by the record, then we may not modify the sentence even if we would have preferred a different result. State v. Pike, 978 S.W.2d 904, 926-27 (Tenn. 1998); State v. Fletcher, 805 S.W.2d 785, 789 (Tenn. Crim. App. 1991).

A defendant is eligible for probation if the actual sentence imposed upon the defendant is eight years or less and the offense for which the defendant is sentenced is not specifically excluded by statute. Tenn. Code Ann. § 40-35-303(a). Probation is to be automatically considered as a sentence alternative for eligible defendants; however, the burden of proving suitability for probation rests with the defendant. Id. § 40-35-303(b).

In determining whether to grant probation, the court must consider the nature and circumstances of the offense; the defendant's criminal record; his or her background and social history; his or her present condition, including physical and mental condition; the deterrent effect on the defendant; and the likelihood that probation is in the best interests of both the public and the defendant. See Stiller v. State, 516 S.W.2d 617, 620 (Tenn. 1974); State v. Kendrick, 10 S.W.3d 650, 656 (Tenn. Crim. App. 1999). If the court determines that a period of probation is appropriate, it shall sentence the defendant to a specific sentence but then suspend that sentence and place the

defendant on supervised or unsupervised probation either immediately or after the service of a period of confinement.  See Tenn. Code Ann. §§ 40-35-303(c), -306(a).

We first note that because the Defendant was convicted of a Class B felony, she is not entitled to a presumption that she is a favorable candidate for alternative sentencing.  See id. § 40-35-102(6).  Nevertheless, because the actual sentence imposed upon the Defendant is eight years, she is eligible for probation.  See id. § 40-35-303(a).  The Defendant asserts that she should have been granted full probation because she has no prior criminal history and she has a good potential for rehabilitation.  She asserts that she is a college-educated fifty-two-year-old woman with two children to support; that she is willing and able to make restitution payments; and that she has mental health issues which would be aggravated by further incarceration.  While we agree with the Defendant that these characteristics support a period of probation, we believe that the trial court considered these factors in its sentencing decision.  In spite of these factors favoring probation, the trial court was clearly troubled by the nature of the offense and the Defendant's attitude concerning her actions.  The Defendant occupied a position of trust as a bookkeeper for a real estate agency, and she systematically abused that position of trust during a period of several years by stealing money from the company.  She was convicted of a Class B felony, which has a sentence range of eight to twelve years for a Range I, standard offender.  See id. § 40-35-112(a)(2).  Had the Defendant not received the minimum sentence in the range, she would not have even been eligible for probation.  See id. § 40-35-303(a).  Although the facts and circumstances of the offense in this case are not so egregious as to outweigh all the other factors favoring partial probation, we conclude that they are "sufficiently reprehensible to deny full probation."  State v. Bingham, 910 S.W.2d 448, 456 (Tenn. Crim. App. 1995), overruled on other grounds by State v. Hooper, 29 S.W.3d 1, 9-10 (Tenn. 2000).

Accordingly, we conclude that the trial court did not err or abuse its discretion by denying the Defendant full probation.  The judgment of the trial court is affirmed.

_____
DAVID H. WELLES, JUDGE